MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH FORD,

       Plaintiff,

v.                        Case No. 3:11-cv-1261-J-39JBT

BENNIE COLEMAN, et al.,

       Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Kenneth Ford, an inmate of the Florida penal system
and former pretrial detainee of the Columbia County Detention
Facility (CCDF), is proceeding on a Second Amended Complaint
(Second Amended Complaint) (Doc. 36) filed pursuant to 42 U.S.C. §
1983.  He is represented by counsel.  Plaintiff names Bennie
Coleman, the Administrator of CCDF, as a Defendant.  Plaintiff also
names D'Andra Cole, Renee Lents, Troy Green, Donna Tyre, and
Richard Collins, all officials at CCDF, as Defendants.  Finally,
although not a model of clarity, Plaintiff names "John Doe(s) 2" as
Defendants.[1]

_____

[1] In the style of the case of the Second Amended Complaint,
Plaintiff mentions John Doe(s) 1 and John Doe(s) 2.  Second Amended
complaint at 1.  On the second page, Plaintiff refers to
"Defendant, John Doe(s) 2," non-prison officials.  Id. at 2.
Finally, under Count III, Plaintiff references "John Doe(s) 2."
Id. at 7.  As a result, the Clerk listed the Defendant as John Doe
2 on the docket and terminated John Doe 1.  The Court construes the
Second Amended Complaint as naming "John Doe(s) 2" as the
fictitious Defendants.

Plaintiff raises the following Counts in his Second Amended Complaint: Count I: Violation of First and Fourteenth Amendment Rights (Right to Free Speech), a claim for damages under 42 U.S.C. § 1983 against Defendants Cole, Lents, Green, Tyre, and Collins; Count II: Violation of First and Fourteenth Amendment Rights (Retaliation), a claim for damages under 42 U.S.C. § 1983 against Defendant Coleman; Count III: Violation of Fourth and Fourteenth Amendment Rights (Right to be Free from Unreasonable Searches and Seizures) a claim for damages under 42 U.S.C. § 1983 against John Doe(s) 2 Defendants; Count IV: Violation of Sixth and Fourteenth Amendment Rights (Right to Counsel), a claim for damages under 42 U.S.C. § 1983 against Defendants Coleman, Cole, Lents, Green, Tyre, and Collins; and Count V: Declaratory Relief, a claim for declaratory relief under 28 U.S.C. § 2201 against Defendants for their violation of Plaintiff's rights under the First, Fourth, Sixth, and Fourteenth Amendments. Defendant Coleman's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (Doc. 42) and Defendants Cole, Lents, Green, Tyre and Collins' Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (Doc. 43) were filed on June 30, 2014.

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment (Plaintiff's Motion) (Doc. 46), requesting the Court enter partial summary judgment regarding Plaintiff's First Amendment claim (Count I), his Sixth Amendment claim (Count

IV), and his declaratory relief claim (Count V).  Plaintiff also seeks a partial summary judgment regarding Defendants Tyre and Lents' first (qualified immunity), second (qualified immunity), fourth (negligence/failure to state a constitutional claim), and fifth (mootness of declaratory relief claim) affirmative defenses.[2] In response, Defendants Tyre and Lents' Second Amended Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 61) was filed on January 6, 2015.  This cause is also before the Court on Defendants' Amended Motion for Summary Final Judgment (Doc. 47) (Defendants' Amended Motion) and Amended Notice of Filing in Support of Motion for Summary Final Judgment of Defendants' (Doc. 48).[3]  Plaintiff responded.  <u>See</u> Plaintiff's Response to Defendants' Motion for Summary Final Judgment (Plaintiff's Response) (Doc. 52).  Plaintiff also filed a Rule 56(c)(1)(A) Stipulation of Facts for Summary Judgment Purposes (Plaintiff's Stipulation) (Doc. 51).

Of import, in Plaintiff's Response, Plaintiff voluntarily dismisses with prejudice his First Amendment retaliation claim against Defendant Coleman (Count II of the Second Amended Complaint) and his Fourth Amendment unreasonable search and seizure claim against Defendant John Doe(s) 2 (Count III of the Second

---

[2] The Court will refer to Plaintiff's exhibits (Doc. 46) as "P. Ex."

[3] The Court will refer to Defendants' exhibits (Doc. 48) as "Ex."

Amended Complaint).   Therefore, the Court will address the remaining Counts:  Count I (Right to Free Speech); Count IV (Right to Counsel); and Count V (Declaratory Relief).

## II. Second Amended Complaint

Plaintiff alleges that, on June 8, 2009, he was arrested and booked into CCDF as a pretrial detainee.  Second Amended Complaint at 2.  A public defender represented him in his criminal case.  Id. Plaintiff, on June 29, 2010, requested access to the law library. Id.  Staff denied his request because Plaintiff had a public defender.  Id.  In May, 2011, Plaintiff filed a grievance concerning denial of access to the law library.  Id.

On or about May 23, 2011, Plaintiff wrote letters to the Florida Bar and the American Civil Liberties Union (ACLU) for legal assistance concerning the denial of access to the law library.  Id. at 3.  On or about July 8, 2011, Plaintiff received a letter from the Florida Bar that had been opened and taped back together and slipped under his door while he was sleeping.  Id.

The corporal, on or about August 15, 2011, brought Plaintiff mail from the ACLU that had been opened and taped back together. Id.  The corporal advised Plaintiff that the letter had been received by her in that condition.  Id.

Plaintiff submitted an informal grievance.  Id.  Defendant Coleman approved the grievance and stated that he would remind staff that legal mail should only be opened in Plaintiff's

presence.  Id.  Thereafter, on August 24, 2011, Plaintiff received a letter from an attorney marked legal mail.  Id.  It had been opened and taped back together prior to its delivery to Plaintiff. Id.  Plaintiff complained to the guard about the condition of the letter.  Id.  A sergeant returned the letter to Plaintiff after writing on the envelope that it had been opened by mistake and had not been read.  Id.

Plaintiff filed another grievance.  Id.  Defendant Coleman told Plaintiff if he continued to complain, he would stop Plaintiff's legal mail and give it to Plaintiff at his convenience. Id.  Plaintiff stopped complaining.  Id.

On November 9, 2011, Plaintiff wrote Defendant Coleman a letter to determine if he could appeal Coleman's decisions.  Id. Coleman responded that Plaintiff had exhausted all grievances.  Id. at 4.  Plaintiff's public defender stopped sending Plaintiff legal mail because he knew that it was being opened.  Id.

### III. Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law controls which facts are material and which are irrelevant.  Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997).  Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.  Eberhardt v. Waters,

901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).

As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. See Bennett v. Parker, 898 F.2d 1530, 1532–34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

6

> judgment." Scott v. Harris, 550 U.S. 372,
> 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per curiam) (footnote omitted).  In an action involving the alleged violation of plaintiff's federal constitutional rights under 42 U.S.C. § 1983, "assuming all facts in the light most favorable to [plaintiff, as the non-moving party]," summary judgment is properly entered in favor of the defendant where "no genuine issue of material fact exist[s] as to whether [plaintiff]'s constitutional rights were violated." McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam).

## IV.  Defendants' Amended Motion

Defendants contend that they are entitled to summary judgment because: (1) they are entitled to qualified immunity, and (2) Plaintiff's claim for declaratory judgment fails on the ground of mootness.  Amended Motion at 1.  Although Defendants also seek summary judgment with respect to Count II, the retaliation claim against Defendant Coleman, Plaintiff voluntarily dismisses that claim with prejudice so it is no longer at issue.

## V. Declaratory Relief Claim (Count V)

Defendants assert that Count V, the claim for declaratory relief, is due to be dismissed for lack of subject matter jurisdiction.  Plaintiff, on the date of the filing of his original Complaint (Doc. 1), was confined at CCDF.  Plaintiff is no longer

confined in CCDF or subjected to the conditions of confinement at
CCDF.  Therefore, the claim for declaratory relief is moot.

> "Article III of the Constitution requires that
> there be a live case or controversy at the
> time that a federal court decides the case; it
> is not enough that there may have been a live
> case or controversy when the case was filed."
> Id. (citation and internal quotations
> omitted).  "The doctrine of mootness provides
> that the requisite personal interest that must
> exist at the commencement of the litigation
> (standing) must continue throughout its
> existence (mootness)."  Id. (citations,
> alterations, and internal quotations omitted).

KH Outdoor, L.L.C. v. Clay Cnty., Fla., 482 F.3d 1299, 1302 (11th
Cir. 2007).  "The general rule in our circuit is that a transfer or
a release of a prisoner from prison will moot that prisoner's
claims for injunctive and declaratory relief." Smith v. Allen, 502
F.3d 1255, 1266 (11th Cir. 2007) (citations omitted), abrogated on
other grounds by Sossamon v. Texas, 131 S.Ct. 1651, 1657 n.3
(2011).  Here, there is no live case or controversy as Plaintiff in
no longer confined at CCDF; Plaintiff is now confined within the
Florida prison system at Apalachee East Correctional Institution.[4]

Any contention that Plaintiff's claim is not moot because
"there is no assurance that he will not be returned to the jail or
that the conditions of which he complains will be ameliorated[,]"
is not persuasive as Eleventh Circuit precedent holds the contrary.

---

[4] Plaintiff was initially received into the custody of the
Florida Department of Corrections on March 6, 2013.  See
http://www.dc.state.fl.us/ActiveInmates/detail.  He is serving a
sentence of life plus thirty years in prison.  Ex. 1 at 6.

See McKinnon v. Talladega Cnty., Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) (a prisoner's transfer from a jail to a state penitentiary moots the claims against the county jailers).  Absent class certification, a claim for declaratory relief raised in a 42 U.S.C. § 1983 action does not present a case or controversy once the plaintiff has been transferred.  Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986) (citation omitted).  Of import, Plaintiff's release from the detention facility and placement in the FDOC does not moot a claim for monetary damages "since a claim for monetary damages 'looks back in time and is intended to redress a past injury.'"[5] Smith v. Allen, 502 F.3d at 1267 n.6 (quoting Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997)).

Plaintiff's contention that the Court recognize and apply a capable-of-repetition-yet-evading-review exception in order to allow the claim for declaratory relief to remain in the case is not well taken.

> There is a recognized "exception to the general rule [of mootness] in cases that are 'capable of repetition, yet evading review.'" Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only

---

[5] Under the Prison Litigation Reform Act, Plaintiff would only be entitled to nominal damages; "[p]risoners like [Plaintiff]- who claim interference with their legal mail but no actual injury- can receive only nominal damages." Robles v. Kane, 550 F. App'x 784, 787 (11th Cir. 2013) (per curiam) (citations omitted).

> where the named plaintiff can make a
> reasonable showing that he will again be
> subjected to the alleged illegality." <u>Los
> Angeles v. Lyons</u>, 461 U.S. 95, 109, 103 S.Ct.
> 1660, 1669, 75 L.Ed.2d 675 (1983) (citation
> omitted). To qualify for the exception, two
> elements must be simultaneously present: "(1)
> the challenged action was in its duration too
> short to be fully litigated prior to its
> cessation or expiration, and (2) there was a
> reasonable expectation that the same
> complaining party would be subjected to the
> same action again." <u>Murphy</u>, 455 U.S. at 482,
> 102 S.Ct. at 1183. "[T]here must be a
> 'reasonable expectation' or a 'demonstrated
> probability' that the same controversy will
> recur involving the same complaining party."
> <u>Id</u>. at 482, 102 S.Ct. at 1184 (emphasis
> added).

<u>Medberry v. Crosby</u>, 135 F. App'x 333, 334-35 (11th Cir. 2005) (per curiam).

This exception is inapplicable to Plaintiff's case. Although Plaintiff may satisfy the first element of short duration, he has failed to establish that there is a reasonable expectation that he will be subjected to the same conditions again as he is serving a life sentence in the FDOC. Indeed, there is no reasonable expectation that he will be returned to CCDF. Thus, the exception to the general rule of mootness does not apply in this instance.

Plaintiff also claims this case falls within the collateral-consequences exception, relying on <u>Carafas v. LaVallee</u>, 391 U.S. 234, 237-38 (1968) (addressing the question of whether the statute defining habeas corpus jurisdiction in respect of persons in state custody is available if the petitioner's sentence expires prior to

a ruling on appellate review).  In <u>Carafas</u>, the Supreme Court found that as long as the applicant was in custody when the application for habeas corpus relief was filed, federal jurisdiction is not defeated by the release of the petitioner prior to the completion of the application.  <u>Id</u>. at 238-39.  In this instance, a dismissal of the claim for declaratory relief in a section 1983 action due to mootness will have absolutely no impact on Plaintiff's ability to seek habeas corpus relief while in state custody based on a claim of ineffective assistance of counsel.

Finally, Plaintiff contends that his claim for declaratory relief is subsumed within his damages action, relying on a Ninth Circuit case, <u>Rhodes v. Robinson</u>, 408 F.3d 559, 566 n.8 (9th Cir. 2005).  Eleventh Circuit precedent does not support this proposition.  Again, absent class certification, the claim for declaratory relief is moot.  Since there is no class certification in this case, Plaintiff's claim for declaratory relief is due to be dismissed for lack of subject matter jurisdiction.

## VI.  First Amendment Free Speech Claim (Count I)

At the outset, the Court recognizes that Plaintiff voluntarily dismisses with prejudice his retaliation claim.  Therefore, his free speech claim is not hinged to a retaliation claim and simply concerns the alleged opening of three pieces of legal mail outside of Plaintiff's presence at CCDF.  It is established that pretrial

detainees have a First Amendment free speech right to receive legal mail:

> Generally, inmates possess a First Amendment right to send and receive mail. <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1333 (11th Cir. 2008); <u>Kaufman v. McCaughty</u>, 419 F.3d 678 685 (7th Cir.2005); <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2nd Cir. 2003); <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995). "[An inmate] has a First Amendment free speech right [to receive legal mail] separate and apart from his constitutional right of access to the courts." <u>Al- Amin</u>, 511 F.3d at 1333. This right is, of course, subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators. <u>Id</u>. The law is well settled that opening legal mail in an inmate's presence to search for contraband fully accommodates the inmate's constitutional rights of both access to the courts and free speech. <u>Al- Amin</u>, 511 F.3d at 1331–1332; <u>Taylor v. Sterett</u> [sic], 532 F.2d 462, 475 (5th Cir. 1976); <u>Guajardo v. Estelle</u>, 580 F.2d 748, 757 (5th Cir. 1978).

<u>Mathis v. Buckman</u>, No. 1:08-CV-725-TMH, 2010 WL 3724501, at *6 (M.D. Ala. July 28, 2010) (Not Reported in F.Supp.2d), <u>report and recommendation adopted by</u> <u>Mathis v. Buckman</u>, 2010 WL 3718538 (M.D. Ala. Sept. 14, 2010) (Not Reported in F.Supp.2d).

Recently, the United States District Court for the Northern District of Florida succinctly summarized the state of the law in the Eleventh Circuit with regard to incoming legal mail:

> In the Eleventh Circuit, incoming court mail is considered legal mail. <u>See</u> <u>Taylor v. Sterrett</u>, 532 F.2d 462, 475–76 (5th Cir. 1976) (holding that, in the context of an access to court claim, prison officials were not entitled to read an inmate's legal mail, including incoming court mail). <u>But see Keenan</u>

v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996)
(indicating that because an inmate's incoming
court mail is largely a matter of public
record, it should not be deemed legal mail);
Martin v. Brewer, 830 F.2d 76, 78 (7th Cir.
1987) (same); see also McCain v. Reno, 98
F.Supp.2d 5, 7-8 (D.D.C. 2000) (the
Constitution does not require same treatment
for court mail as for attorney mail). In
Al-Amin, in addressing a prisoner's attorney
mail claim, the Eleventh Circuit concluded
that the factors outlined in Turner, supra,
weighed in the plaintiff's favor and did not
undermine the holding in Taylor that inmates
have a constitutionally protected right to
have their properly marked attorney mail
opened in their presence. Al-Amin, 511 F.3d at
1334. The Al-Amin court was precise in
limiting its holding to the facts before it.
Id., at 1326 n. 19 (stating that "[a]lthough
Taylor also addressed other types of mail
between inmates and prosecuting attorneys,
courts, and probation/parole officers, we
focus on only attorney mail in this case.").
It then concluded that a prison's "pattern and
practice" of opening attorney mail outside the
inmate's presence impinged upon his right to
freedom of speech. Id., at 1334. Nevertheless,
as noted previously, "an isolated incident of
mail tampering is usually insufficient to
establish a constitutional violation ....
Rather, the inmate must show that prison
officials 'regularly and unjustifiably
interfered with'" with his legal mail. Davis,
320 F.3d at 351.

O'Connor v. Carnahan, No. 3:09cv224-WS/EMT, 2014 WL 293457, at *7

(N.D. Fla. Jan. 27, 2014) (footnote omitted).

Defendants' first assertion is that the piece of mail from the

Florida Bar does not constitute protected legal mail. Of import,

the mail from the Florida Bar does not constitute court mail.

Indeed, the mail did not originate from a court. In addition, the

envelope from the Florida Bar is not marked "legal mail" and the return address does not include the name of an attorney or any designation in the return address signifying that the mail is from an attorney.  Ex. 4.  Plaintiff testified that he asked the Florida Bar for an "inquiry complaint form," and the piece of mail opened at CCDF from the Florida Bar contained the form.  Ex. 1 at 32-33.[6]

The Eleventh Circuit, in <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1334 n.34 (11th Cir. 2008), <u>cert</u>. <u>denied</u>, 555 U.S. 820 (2008), limited its First Amendment free speech right to "attorney-client mail only."  <u>See</u> <u>Taylor v. James</u>, No. 1:10-CV-2605-TWT, 2010 WL 4116838, at *2 n.3 (N.D. Ga. Oct. 8, 2010) (Not Reported in F.Supp.2d) (recognizing that an inmate has a First Amendment right to communicate with his attorneys by mail, but the Eleventh Circuit has limited that free speech right to attorney-client mail only, and the plaintiff did not allege interference with mail to or from his attorney).

The specific issue before the Court in <u>Al-Amin</u> was "whether the defendants' pattern and practice of opening (but not reading) Al-Amin's clearly marked attorney mail outside his presence sufficiently chills, inhibits, or interferes with Al-Amin's ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." <u>Al-Amin v. Smith</u>, 511 F.3d at

---

[6] For this exhibit, the Court references the deposition page numbers, not the page numbers assigned by the electronic filing system.

1333.  Al-Amin received mail from one of his attorneys (Al-Amin's wife), and the envelope included her law office address and was marked "privileged, legal mail."  <u>Id</u>. at 1335 n.36.

In <u>Moore v. Hoeven</u>, No. 1:08-cv-028, 2008 WL 1902451, at *10 (D. North Dakota, Apr. 28, 2008) (Not Reported in F.Supp.2d), the court reviewed the decision of <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), which held that the practice and policy of opening mail from attorneys for inspection for contraband, so long as the inspection was done in the presence of the inmate to assure the mail was not read, passed constitutional muster.  In <u>Moore</u>, 2008 WL 1902451, at *10, the court also noted that in <u>Wolff</u>, the Supreme Court recognized that due to the volume of mail processed by prison officials, it was reasonable for the officials to require that such mail from attorneys be specially marked as originating from an attorney, with the name and address of counsel.  Of note, CCDF's Operations Directive 6021.00, Rules for Detainees, revised July 20, 2010, requires that "[l]egal mail be marked "Legal Mail" and visible to the staff members."  Ex. 17 at 6.

As found in <u>Al-Amin</u>, 511 F.3d at 1336, "prison officials violate an inmate's constitutional rights when the official opens attorney mail outside the inmate's presence."  There are several factors in this case which bring this Court to the conclusion that the piece of mail from the Florida Bar does not constitute attorney-client mail.  Initially, the Court notes that the envelope

is not marked "legal mail" and the name of an attorney is not included in the return address. Plaintiff does not allege interference with communication with his criminal attorney as a result of the opening of the Florida Bar mail. Assuming arguendo that this mail from other legal sources is entitled to constitutional protection, there is no violation in this instance because the envelope did not contain mail of a confidential or privileged nature. Instead, as Plaintiff attested, it contained a Florida Bar form. "The constitutional interest, to the extent that there is one, is in prison officials not being able to read privileged or confidential information-not simply the failure to follow the procedures employed to help insure this does not take place." Moore v. Hoeven, 2008 WL 1902451, at *12 n.13. Under these circumstances, the Florida Bar mail simply does not qualify as privileged attorney-client legal mail and it is not "court mail."

Therefore, review of Plaintiff's claims regarding the opening of legal mail will be restricted to the letter from the ACLU and the letter from attorney Ronald Toward. Both of these pieces of mail were visibly and clearly marked as legal mail, and Defendants do not contend that they fail to constitute privileged legal mail. Circuit precedent "clearly establishes that a prison official violates an inmate's constitutional rights when the official opens attorney mail outside the inmate's presence." Al-Amin v. Smith,

511 F.3d at 1336.  Not only is there First Amendment free speech implications involved in this case, "inspection of attorney-client privileged mail relating to criminal matters may impose an undue burden on the Sixth Amendment's right to counsel."  Moore v. Hoeven, 2008 WL 1902451, at *10 (footnote omitted).  Properly marked attorney mail should not be opened outside of an inmate's presence.

Defendants contend that they are entitled to qualified immunity with respect to the opening of these two pieces of legal mail under the circumstances presented.  In determining whether Defendants are entitled to qualified immunity, the Court must make the following inquiry:

> Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." Id.

Spradley v. Sistrunk, No. 92-136-CIV-FTM-17D, 1996 WL 467511, at *5 (M.D. Fla. Aug. 13, 1996) (Not Reported in F.Supp.).

There is no dispute that Defendants were acting in their discretionary authority as CCDF corrections officials in handling inmates' mail. Al-Amin v. Smith, 511 F.3d at 1324. The next question is whether the allegations, if true, establish a constitutional violation. Id. The final question to be addressed is whether the constitutional right was clearly established at the time of the alleged violation. Id.

The narrow issue in this case, as it was in Al-Amin, is whether there is a pattern or practice of CCDF staff opening, but not reading, visibly and clearly marked attorney mail outside of Plaintiff's presence. As noted by this Court, a prisoner or detainee must show that corrections officials regularly and unjustifiably interfered with incoming legal mail. Lewis v. Sec'y, DOC, No. 2:10-cv-547-Ftm-29DNF, 2013 WL 5288989, at *10 (M.D. Fla. Sept. 19, 2013). Plaintiff filed his first grievance concerning the opening of his legal mail after staff opened the ACLU letter. Ex. 1 at 51. After this grievance, there was one isolated incident of staff opening clearly marked attorney mail: the letter from Ronald Toward, Esquire. Id. Plaintiff complains of no further incidents of staff opening his clearly marked legal mail at the CCDF. Also, Plaintiff no longer contends that there were threats to withhold his mail in retaliation for his grievances. Furthermore, in Plaintiff's Stipulation, he states that Defendant Tyre accidentally opened but did not read the August 10, 2011 ACLU

letter, and Defendant Lents accidentally opened but did not read attorney Ronald Toward's August 22, 2011 letter.[7]

In <u>Ford v. Hunter</u>, 534 F. App'x 821, 824 (11th Cir. 2013), the Eleventh Circuit, in reversing and remanding this case to this Court,[8] said:

> In <u>Al-Amin</u> we found a constitutional violation where prison officials engaged in a pattern and practice of opening, but not reading, a plaintiff's clearly marked attorney mail outside his presence. This practice "sufficiently chills, inhibits, or interferes with [a plaintiff's] ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." <u>Id</u>. at 1334. In this case, Plaintiff had only two letters opened after he complained to prison officials. These two incidents, coupled with Defendant Coleman's threats to withhold Defendant's mail entirely, are enough to state a First Amendment Free Speech claim. Because Plaintiff's complaint alleged prison officials opened and read his legal mail outside his presence, the facts as alleged were certainly not frivolous. Accordingly, the district court clearly abused its discretion in concluding Plaintiff's complaint did not support a First Amendment Free Speech claim, and we reverse.

Much has changed since the filing of the original pro se Complaint (Doc. 1).  As previously noted, in Plaintiff's Second Amended Complaint, he states that only one piece of legal mail was opened outside of his presence after he submitted his grievance

---

[7] Plaintiff also submits that detention facility staff accidentally opened but did not actually read the Florida Bar mail dated June 30, 2011.  Plaintiff's Stipulation.

[8] This Court screened Plaintiff's original Complaint under 28 U.S.C. § 1915A and dismissed the Complaint as frivolous.

concerning his legal mail to the detention facility officials.[9] Plaintiff no longer asserts that Defendant Coleman made threats to withhold his mail, as he has voluntarily dismissed the retaliation claim against Defendant Coleman with prejudice. Plaintiff also stipulates that the detention facility officials opened but **did not read** his legal mail outside his presence.

In addressing a very similar free speech claim on summary judgment, the United States District Court for the Middle District of Alabama noted the plaintiff's conclusory allegations that his mail was opened constantly, but considered the fact that he only pointed to two incidences in which his mail was delivered to him already opened by staff. Owuor v. Welch, No. 2:09-cv-1098-CSC, 2012 WL 4513618, at *8 (M.D. Ala. Oct. 1, 2012) (Not Reported in F.Supp.2d). In finding failure to establish a constitutional violation, the court said: "[a]t best, **these two incidents** demonstrate **isolated incidents** insufficient to establish a constitutional violation." Id. (emphasis added). As such,

> An isolated incident of mail opening is insufficient to establish a constitutional violation. Davis v. Goord, 320 F.3d 346, 351 (2nd Cir. 2003) (allegation of two incidents of mail interference did not warrant relief

---

[9] Even assuming that the Florida Bar letter constituted attorney-client legal mail, Plaintiff did not submit a grievance to detention facility staff until after the ACLU letter was opened outside of his presence. Plaintiff readily admits that he did not file any kind of grievance when he received the Florida Bar letter, he "[j]ust asked verbally about it." Ex. 1 at 51. He could not recall who he asked about it. Id.

where plaintiff failed to allege invidious intent or actual harm); <u>Florence v. Booker</u>, 23 Fed. Appx. 970, 972-973 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts"); <u>Berger v. White</u>, 12 Fed. Appx. 768, 771 (10th Cir. 2001) ("isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim. <u>Smith v. Maschner</u>, 899 F.2d 940, 944 (10th Cir. 1990)"); <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997) (isolated incident of inadvertent opening of inmate's incoming legal mail, without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts, does not rise to level of constitutional violation); <u>Stevenson v. Koskey</u>, 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's legal mail, while not to be condoned, constitutes mere negligence and does not rise to the level of a constitutional rights violation cognizable under 42 U.S.C. § 1983).

<u>Owuor v. Welch</u>, 2012 WL 4513618, at *8.

For the purposes of this opinion, the Court relies on Plaintiff's stipulation that the two incidents in question were accidental openings. <u>See</u> Plaintiff's Stipulation. Thus, there is no factual dispute as to whether or not there was some improper motive in opening the legal mail. <u>Smith v. Bartalotta</u>, No. 2:08-cv-628-FtM-29SPC, 2009 WL 981980, at *3 (M.D. Fla. Apr. 13, 2009) (Not Reported in F.Supp.2d) (citing <u>Smith v. Maschner</u>, 899 F.2d 940, 944 (10th Cir. 1990) (holding an "isolated incident, without

any evidence of improper motive or resulting interference with [Plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")).

In his deposition, Plaintiff testified that when he informed his public defender about his legal mail being opened, counsel told Plaintiff not to worry about it as it was not a big deal. Ex. 1 at 72-73. Plaintiff states that his public defender's attitude changed as a result of Plaintiff suing the Defendants, and at the point, the public defender said he was not going to send anything to Plaintiff because he believed staff may rummage through the mail as a result of Plaintiff suing the detention facility staff. Id. at 73. Of note, Plaintiff filed his original civil rights complaint in this case on December 21, 2011, pursuant to the mailbox rule, several months after his legal mail was opened by mistake by staff at the CCDF in August of 2011. Complaint (Doc. 1 at 11).

Here, at best, Plaintiff has demonstrated two openings of legal mail by different staff members on different dates. These openings were isolated, accidental openings of legal mail outside the presence of the Plaintiff, incidents which are insufficient to establish a constitutional violation. Thus, Defendants Tyre and Lents, the individuals that accidentally opened the clearly marked legal mail, are entitled to qualified immunity. Defendant Collins is entitled to qualified immunity as well. He did not open any

legal mail outside the presence of Plaintiff and did not otherwise violate Plaintiff's constitutional rights.   Defendant Cole is entitled to qualified immunity as she simply delivered the mail to Plaintiff's cell on August 15, 2011 and did not open the mail. Defendant Green is entitled to qualified immunity.   He did not open, remove, or read legal mail addressed to Plaintiff.   In addition, he did not take any action which violated Plaintiff's First Amendment right to free speech.

The Court finds that Defendants are entitled to qualified immunity on Plaintiff's First Amendment free speech claim (Count I).   Summary judgment will be entered in their favor on this claim.

## VII.   Count IV Violation of Right to Counsel

In this ground, Plaintiff claims that Defendants Tyre, Lents, Cole, Collins, Green and Coleman violated his Sixth Amendment right to counsel.   Plaintiff alleges that his public defender stopped sending legal mail because he knew it was being opened.   Second Amended Complaint at 4.   Defendants contend they are entitled to qualified immunity because the inadvertent opening of the letters from the ACLU and Ronald Toward did not interfere with Plaintiff's confidential relationship with his criminal defense counsel, Blair Payne.   They also assert they are entitled to qualified immunity because Plaintiff's assertion that the accidental openings of the legal mail interfered with his confidential relationship with Mr. Payne is belied by Plaintiff's deposition testimony in which he

testified that defense counsel told him not to worry about prison staff opening the legal mail and it was not a big deal.  Finally, Defendants assert they are entitled to qualified immunity because the incidents of legal mail being opened outside of Plaintiff's presence were accidental, the staff did not read the mail, and there is no evidence of improper motive on the part of the staff who accidentally opened the mail or interference with Plaintiff's right to counsel.

Again, Defendants were performing discretionary functions in handling the mail at CCDF.  The Court must ask whether the allegations, if true, establish a constitutional violation.  If so, the final question to be addressed by the Court is whether the constitutional right was clearly established at the time of the alleged violation.

Plaintiff, in his Motion for Partial Summary Judgment, contends that for the same reasons Defendants Tyre and Lents violated Plaintiff's First Amendment right to free speech, they violated his Sixth Amendment right to counsel.  Plaintiff's Motion at 14.  He explains his rationale: "[u]pon learning that officials at the Detention Facility had opened Plaintiff's privileged and legal mail, his public defender stopped sending him legal records and mail."  Id.  He urges the Court to find that "by opening Plaintiff's clearly marked legal mail outside of his presence, [the Defendants] interfered with Plaintiff's right to counsel before his

criminal trial, which constitutes a serious deprivation[.]" <u>Id</u>.

The Eleventh Circuit, in <u>Lemon v. Dugger</u>, 931 F.2d 1465, 1467 (11th Cir. 1991), explained:

> Appellants then cite the Fifth Circuit decision [mistakenly cited as the Eleventh Circuit], but binding precedent on this Court of <u>Taylor v. Sterrett</u>, 532 F.2d 462 (5th Cir. 1976). There, the Court held that it was a violation of an inmate's constitutional rights for the prison officials to read legal mail. As the Court noted:
>
>> The basic prisoner interest is an uninhibited communication with attorneys.... [P]risoners have a vital need to communicate effectively with [their attorneys]. This is to insure ultimately that the judicial proceedings brought against or initiated by prisoners are conducted fairly. Since the prisoner's means of communicating with these parties are restricted sharply by the fact of incarceration, the essential role of postal communication cannot be ignored.

532 F.2d at 475.

Although "inspection of attorney-client privileged mail relating to criminal matters may impose an undue burden on the Sixth Amendment's right to counsel," <u>Moore v. Hoeven</u>, 2008 WL 1902451, at *10 (footnote omitted), here there were two accidental openings of legal mail, and neither of the pieces of mail at issue were from Plaintiff's criminal defense attorney, Blair Payne.[10] The

---

[10] The content of the mail from the Florida Bar was not from Blair Payne.

25

mail was not read.  According to Plaintiff's sworn testimony, Mr. Payne was unconcerned with these openings of Plaintiff's legal mail and they did not deter him in his representation of Plaintiff.  Of note, Plaintiff waited several months before he filed a civil rights lawsuit against the Defendants.  Plaintiff states that Mr. Payne became concerned about staff opening legal mail only when Plaintiff sued the Defendants; Mr. Payne thought Defendants may rummage through Plaintiff's mail due to the filing of the lawsuit against them.

This Court looks to the seminal decision of <u>Taylor v. Sterrett</u>, 532 F.2d at 472, in addressing Plaintiff's Sixth Amendment right to counsel claim:

> Pre-trial detainees are ordinarily most interested in communication with attorneys as a vital component of their right to counsel in pending criminal prosecutions. Since the right to effective counsel under the Sixth Amendment extends only to criminal matters, <u>see</u> <u>Wolff v. McDonnell</u>, 418 U.S. at 576, 94 S.Ct. at 2984, 41 L.Ed.2d at 962, it is applicable solely to pre-trial detainees or to a convicted prisoner being tried on additional charges or contesting the legality of a previous conviction.

Plaintiff surmises that he "was ultimately convicted of his criminal charges, perhaps in part due to the fact his public defender discontinued communicating with him through legal mail." Plaintiff's Response at 11.  The record shows, however, that Plaintiff attested that his criminal defense attorney stopped sending Plaintiff legal mail when Plaintiff sued the Defendants,

26

not after Plaintiff informed counsel of the openings of legal mail.

In pertinent part, Plaintiff's deposition states:

> Q.  Did you ever talk with your public defender about your legal mail being opened.
>
> A.  Yes, ma'am.
>
> Q.  Did you ever ask him what you could do about that?
>
> A.  Yes, ma'am.  He told me not to worry about it.  It wasn't no big deal.  I mean, when - before I filed the lawsuit.[11]  Then, when after I filed the lawsuit, that's when he all of a sudden wasn't going to send me anything anymore, because they were going to rummage through it.  But when I first asked him about the legal mail situation, he told me it was no big deal and not to worry about it.

P. Ex. 1 at 72:20-73:6.

This testimony shows that counsel was not concerned about the incidental openings of legal mail that took place in August of 2011; however, he was very concerned about the fact that Plaintiff had sued the Defendants, and he apparently made the supposition that staff would rummage through Plaintiff's legal mail as a consequence of Plaintiff taking that action.  Of course, Plaintiff confirms there were no further incidents of openings of legal mail outside of his presence by CCDF staff after attorney Toward's letter was accidently opened.  P. Ex. 1 at 61:3-6.  The record also

---

[11] Plaintiff filed this civil rights case on December 21, 2011, pursuant to the mailbox rule.

demonstrates that Mr. Payne came to see Plaintiff at the jail and brought documents or records with him.  Id. at 67:10-17.

Based on the above, the Court concludes that the accidental openings of Plaintiff's legal mail, not authored by criminal defense attorney Payne or sent by attorney Payne, which were not read, did not interfere with Plaintiff's confidential relationship with his defense counsel.  Also, Mr. Payne did not stop sending Plaintiff legal mail due to the accidental openings of Plaintiff's legal mail outside of his presence; instead, counsel stopped sending legal mail because Plaintiff sued the Defendants and counsel feared, whether well-founded or not, that the lawsuit may cause Defendants to rummage through Plaintiff's mail.[12]  Finally, there is no evidence of improper motive or any actual interference with Plaintiff's right to counsel as a result of these isolated incidents of opening legal mail.  Plaintiff has stipulated that the openings were accidental and none of the mail was read. Plaintiff's Stipulation.

There was no undue burden placed on Plaintiff's Sixth Amendment's right to counsel by the accidental openings of legal mail that was not read by staff nor sent from Plaintiff's criminal defense counsel.  Plaintiff has failed to establish a constitutional violation.  Defendants are entitled to qualified

---

[12] There is no assertion or evidence showing Defendants opened any legal mail outside of Plaintiff's presence after Toward's letter was accidentally opened in August, 2011.

immunity with respect to Plaintiff's Sixth Amendment right to counsel claim and they are entitled to summary judgment on this claim.

## VIII.  Plaintiff's Motion

Plaintiff seeks the entry of partial summary judgment against Defendants with respect to his First Amendment free speech claim (Count I), his Sixth Amendment right to counsel claim (Count IV), and his declaratory relief claim (Count V).  Plaintiff's Motion at 1.  He also asks the Court to enter partial summary judgment against Defendants Tyre and Lent's first (qualified immunity), second (qualified immunity), fourth (negligence/failure to state a claim) and fifth (mootness of declaratory relief claim) affirmative defenses.  Id.

The Court has found the declaratory relief claim moot; therefore, Plaintiff is not entitled to partial summary judgment on this claim or against Defendants Tyre and Lent on the fifth affirmative defense.  The Court finds Defendants' motion for summary judgment is due to be granted with respect to Counts I and IV, as a result, the Court denies Plaintiff's request for partial summary judgment on those counts.  Also, based on the Court's granting of Defendants' assertion of qualified immunity, the Court denies Plaintiff's request for the Court to enter partial summary judgment against Defendants Tyre and Lent's affirmative defenses of qualified immunity (first and second affirmative defenses) and the

affirmative defense of negligence/failure to state a claim (fourth affirmative defense).   In sum, Plaintiff's Motion is due to be denied.

Therefore, it is now

**ORDERED:**

1.   Plaintiff's voluntary dismissal with prejudice of his First Amendment retaliation claim against Defendant Coleman (Count II of the Second Amended Complaint) and his Fourth Amendment unreasonable search and seizure claim against Defendant John Doe(s) 2 (Count III of the Second Amended Complaint), contained in Plaintiff's Response to Defendants' Motion for Summary Final Judgment (Doc. 52), is **GRANTED.**   The First Amendment retaliation claim against Defendant Coleman (Count II of the Second Amended Complaint) and the Fourth Amendment unreasonable search and seizure claim against Defendant John Doe(s) 2 (Count III of the Second Amended Complaint) are hereby **DISMISSED WITH PREJUDICE**.   Defendant John Doe(s) 2 is **DISMISSED** from this action **with prejudice.**

2.   Defendants' Amended Motion for Summary Final Judgment (Doc. 47) is **GRANTED.**

3.   The **Clerk** shall enter judgment in favor of Defendants' Bennie Coleman, Richard Collins, Troy Green, D'Andra Cole, Renee Lents, and Donna Tyre and against Plaintiff Kenneth Ford.

4.   Plaintiff's Motion for Partial Summary Judgment (Doc. 46) is **DENIED.**

5.    The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of

May, 2015.

_____
                BRIAN J. DAVIS
          United States District Judge

sa 5/22
c:
Counsel of Record